**Petition for Writ of Mandamus Conditionally Granted, Affirmed, and Opinion filed December 8, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00726-CV

---

## METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, TEXAS, Appellant

## V.

## TERRY SMITH, Appellee

---

**On Appeal from the 11th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2016-18317**

---

**and**

---

## NO. 14-22-00048-CV

---

## IN RE METROPOLITAN TRANSIT AUTHORITY OF HARRIS COUNTY, TEXAS, Relator

**O P I N I O N**

Terry Smith sued Metropolitan Transit Authority of Harris County, Texas ("METRO") and asserted a claim for negligence, alleging that he was accidentally shot by one of METRO's law enforcement officers. Approximately five years into the litigation, METRO filed a motion for leave to designate a responsible third party, which Smith opposed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004. The trial court signed an order denying METRO's motion for leave and prohibited METRO from introducing any evidence pertaining to the alleged responsible third party. METRO filed a petition for writ of mandamus challenging the trial court's ruling.

METRO subsequently filed its second plea to the jurisdiction and relied on evidence of the alleged responsible third party's culpability in the underlying incident. The trial court signed an order denying METRO's second plea and METRO filed an interlocutory appeal challenging the denial.

In the original proceeding[1], we determine relator-METRO is entitled to mandamus relief and order the trial court to vacate its (1) September 4, 2021 order denying METRO's motion for leave to designate a responsible third party, (2) January 3, 2022 "Order Granting Plaintiff's Motion to Exclude All Testimony, Evidence, and Argument Regarding Any and All Undesignated Alleged Responsible Third Parties", and (3) January 3, 2022 order striking METRO's third

---

[1] Appellate case number 14-22-00048-CV.

2

amended answer. In the interlocutory appeal[2], we affirm the trial court's November 30, 2021 denial of appellant METRO's second plea to the jurisdiction.

## BACKGROUND

Smith, a Houston police officer, was conducting traffic enforcement in a midtown parking lot when he was shot in the stomach. The initial investigation suggested Smith was shot by Gregory Hudson, a METRO police department officer who was issuing traffic citations in the same parking lot and working close to Smith. Smith was transferred to the hospital, where a .22 caliber bullet was removed from his body.

In March 2016, Smith sued METRO for negligence, asserting his injuries were caused when Hudson negligently discharged his firearm. Smith propounded requests for disclosure with his petition. *See* Tex. R. Civ. P. 194.3. METRO responded to the requests in June 2016 and, in relevant part, provided the following answers:

> (b) the name, address, and telephone number of any potential parties:
>
> **Response: None that [METRO] is aware of.**
>
> (c) the legal theories and, in general, the factual bases of the responding party's claims or defenses (the responding party need not marshal all evidence that may be offered at trial):
>
> **Response: METRO enters a general denial of all matters pleaded by [Smith] and requests that this Court require that [Smith] prove all charges and allegations described in [Smith's] Original Petition by a preponderance of the evidence, as required by the Constitution and laws of the State of Texas.**
>
> **METRO denies this alleged incident ever occurred as described by [Smith]. However, for further answer if same be necessary,**

---

[2] Appellate case number 14-21-00726-CV.

**Defendant METRO would also show the Court that any injury allegedly sustained by [Smith] were [sic] proximately caused by the intentional and/or negligent actions of someone not under the control of [METRO].**

\*　　　　　　\*　　　　　　\*

(l)　　the name, address, and telephone number of any person who may be designated as a responsible third party.

**Response:　Unknown to [METRO].**

METRO filed its original answer and pleaded two affirmative defenses: "Governmental Immunity" and "Statutory Limitations." METRO filed its first amended answer in June 2017 and added "Unavoidable Accident" and "Sole Proximate Cause" to its list of affirmative defenses, both of which referenced an unknown shooter:

**Unavoidable Accident**

The occurrence in question was an unavoidable accident, that is an event not proximately caused by the negligence of any party to the occurrence as the cause of the occurrence was a third party who negligently discharged a .22 caliber weapon and struck Officer Smith.

**Sole Proximate Cause**

The sole proximate cause of the occurrence was a third party who discharged a .22 caliber weapon and struck Officer Smith.

METRO filed a second amended answer reiterating these affirmative defenses.

In August 2017, METRO filed a plea to the jurisdiction, asserting that Smith failed to allege any facts to support a waiver of immunity under the Texas Tort Claims Act. Smith filed a response and the trial court denied METRO's plea. METRO filed an interlocutory appeal and this court affirmed the trial court's denial of METRO's plea to the jurisdiction. *See Metro. Transit Auth. of Harris Cnty. v. Smith*, No. 14-17-00807-CV, 2018 WL 6494141 (Tex. App.—Houston [14th Dist.] Dec. 11, 2018, no pet.) (mem. op.).

In May 2019, the parties filed an agreed motion for a continuance referencing ongoing developments in the investigation of Smith's shooting. In relevant part, the motion states:

> While on appeal, the facts of this case may have changed substantially. On July 17, 2018[,] District Attorney Kim Ogg's Office advised the parties that HPD investigators recovered a .22 caliber rifle which they believe to have been used in the shooting of Plaintiff Smith. The Houston Forensic Science Center also conducted ballistics tests on the bullet taken from Smith and are stating privately that the bullet was fired from a .22 caliber rifle. On August 21, 2018, counsel for both parties met with ADA Lauren Bard. She shared additional facts which neither party may disclose due to a Confidentiality Agreement.
>
> The parties have diligently attempted to gather this information in admissible form, but have been unsuccessful. On January 22, 2019, the parties sent a deposition by written questions to the DA's office on the issues contained in the July 17, 2018 letter. The DA's office declined to respond to the questions, but did provide an affidavit, which is not admissible.
>
> The reason this case needs to be continued is that until the criminal case is tried, the DA's office will not give any testimony in the civil. They do not want to jeopardize the prosecution of the criminal case.
>
> The problem for METRO is that it is unable to present admissible evidence which will potentially exonerate MPD Officer Greg Hudson and METRO. It is undisputed that Hudson was not found with a .22 caliber rifle at the scene.
>
> The problem for Plaintiff Smith and his counsel is that they do not want to make a decision about non-suiting the case without substantive testimony as to the ballistics tests; which could rule out MPD Officer Hudson as Smith's shooter.
>
> The DA's office has not advised as to when the criminal case will go to trial.
>
> All parties agree to the continuance.

(internal citations omitted).

METRO filed its second supplemental responses to Smith's requests for disclosure in June 2019. In contrast to its original responses, METRO's second supplemental responses provided the following answers to the inquiries addressing potential parties and responsible third parties:

> (b)  the name, address, and telephone number of any potential parties:
>
> **RESPONSE:      The person who fired the .22 caliber rifle which shot Officer Terry Smith.**
>
> *                              *                              *
>
> (l)  the name, address, and telephone number of any person who may be designated as a responsible third party:
>
> **RESPONSE:      The shooter of the rifle. The shooter[']s name is contained in the Burrow's Affidavit.**

METRO subsequently filed a combined traditional and no-evidence summary judgment motion in November 2019. In the motion, METRO argued:

> There is **ABSOLUTELY** no evidence that Hudson shot Smith! In fact, all of the forensic evidence gathered by HPD investigators demonstrates Smith was shot by a third person who fired a .22 caliber rifle from a distance.

(emphasis in original). METRO included with its motion the following evidence: the July 17, 2018 letter from Harris County Assistant District Attorney Lauren Bard; an affidavit from HPD Detective Michael Burrow; and a Houston Forensic Science Center ballistics report.

Bard's July 2018 letter was addressed to counsel for both METRO and Smith and states, in relevant part:

> I am currently investigating several shootings believed to have been committed by a single suspect. In the course of this investigation, police investigators have recovered a .22 caliber rifle that we believe to have been used in these shootings by the suspect. The Houston Forensic Science Center (HFSC) also conducted ballistics tests on the

fired projectile that was recovered from Officer Terry Smith after he was shot on June 9, 2015.

HFSC has confirmed that the fired projectile recovered from Officer Smith's body had been fired by the suspect's .22 rifle.

Because it is my understanding that you are currently involved in pending litigation related to the June 9, 2015 shooting of Officer Smith, I am bringing this ballistics report to your attention.

In his affidavit, Detective Burrow said an investigation into a "series of unsolved sniper-style shootings in 2015 and 2016" linked Jamin Stocker to Smith's shooting. Detective Burrow said Stocker's home was searched in 2017 and officers recovered a .22 caliber rifle as well as "a news article about the shooting of Officer Smith [and] several other articles about similar area shootings." Like Bard, Detective Burrow said ballistics testing determined the .22 caliber rifle recovered from Stocker's home was "the rifle used in the shooting of Officer Smith."

Smith responded to METRO's summary judgment motion and submitted evidence to support his contention that Hudson was the shooter. Smith also asserted objections to METRO's summary judgment evidence.

In March 2021, Smith filed a "Motion to Exclude All Testimony, Evidence, and Argument Regarding Any and All Undesignated Alleged Responsible Third Parties." Citing Texas Civil Practice and Remedies Code section 33.004, Smith argued that METRO should be prohibited from introducing evidence that someone other than Hudson shot Smith because METRO failed to move for leave to designate a responsible third party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004.

METRO subsequently filed a motion for leave to designate Stocker as a responsible third party pursuant to section 33.004. METRO also filed a third amended answer that designated Stocker as a responsible third party. Smith filed a

response opposing METRO's motion for leave as well as a motion to strike METRO's third amended answer. On September 4, 2021, the trial court signed an order denying METRO's motion for leave to designate a responsible third party. The trial court also signed an order striking METRO's third amended answer.

METRO filed a second plea to the jurisdiction in October 2021. METRO attached to the motion Detective Burrow's deposition, in which Detective Burrow opined that Stocker was the person who shot Smith.

Smith responded to METRO's second plea to the jurisdiction and objected to any statements or evidence referencing Stocker, citing the trial court's order denying METRO's motion for leave to designate a responsible third party. Smith also moved to strike Detective Burrow's deposition under Texas Rules of Evidence 402, 403, and 702.

On November 30, 2021, the trial court signed an order sustaining Smith's evidentiary objections, striking Detective Burrow's deposition, and denying METRO's second plea to the jurisdiction. On January 3, 2022, the trial court signed an "Order Granting [Smith's] Motion to Exclude All Testimony, Evidence, and Argument Regarding Any and All Undesignated Alleged Responsible Third Parties." The trial court reasoned that Smith's motion should be granted:

> because [METRO] failed to comply with the laws of the State of Texas including timely disclosure, timely designation, and failed to produce sufficient evidence to establish a genuine issue of material fact regarding the conduct of any unnamed and undesignated alleged responsible third party in causing or contributing to the cause of the subject incident made the basis of this suit.

The trial court's order states that METRO is prohibited from offering any evidence or argument pertaining to any alleged responsible third party.

METRO filed a petition for writ of mandamus challenging the trial court's

8

(1) denial of its motion for leave to designate a responsible third party, and (2) subsequent exclusion of all allegations and evidence regarding a non-party's liability with respect to the shooting. METRO also filed an interlocutory appeal challenging these evidentiary rulings as well as the denial of its second plea to the jurisdiction. We consolidate the two proceedings for purposes of this opinion and dispose of them simultaneously.

## ANALYSIS

METRO's petition for writ of mandamus challenges the trial court's denial of its motion for leave to designate Stocker as a responsible third party. Because evidence of Stocker's alleged involvement in Smith's shooting is relevant to our jurisdictional analysis, we begin with the issues raised in METRO's petition. *See, e.g.*, *City of Dallas v. Papierski*, No. 05-17-00157-CV, 2017 WL 4349174, at *2 (Tex. App.—Dallas Oct. 2, 2017, no pet.) (mem. op.) ("Before considering the merits of the City's plea to the jurisdiction, we must address the evidence presented in the City's plea and [appellee's] subsequent objections to that evidence."); *Schronk v. City of Burleson*, 387 S.W.3d 692, 703 n.6 (Tex. App.—Waco 2009, pet. denied) ("Because the admissibility of the Schronks' evidence impacts our review of the merits of the City's plea to the jurisdiction, we first address their fourth point.").

Specifically, METRO raises three issues in its petition for writ of mandamus and asserts the trial court abused its discretion by:

1. excluding all testimony, argument, and evidence of a non-party's liability;

2. denying METRO's motion for leave to designate a responsible third party; and

3. striking METRO's third amended answer.

9

We focus our analysis on the arguments raised in METRO's second issue and conclude the trial court abused its discretion when it denied METRO's motion for leave to designate a responsible third party. Because this denial supplied the basis for the trial court's subsequent exclusion of all testimony, argument, and evidence of a non-party's liability and its order striking METRO's third amended answer, we also sustain METRO's first and third issues.

## I.  Mandamus

### A.  Standard of Review and Governing Law

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that the relator has no adequate remedy by ordinary appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Cap. Mgmt., L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). "The relator must establish that the trial court could reasonably have reached only one decision." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). "Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless it is shown to be arbitrary and unreasonable." *Id*.

Ordinarily, a relator need only establish a trial court's abuse of discretion to demonstrate entitlement to mandamus relief with regard to a trial court's denial of a timely filed section 33.004(a) motion to designate a responsible third party because, in this situation, the relator does not have an adequate remedy by appeal. *See In re Coppola*, 535 S.W.3d 506, 510 (Tex. 2017) (orig. proceeding) (per curiam); *In re Cordish Co.*, 617 S.W.3d 909, 913 (Tex. App.—Houston [14th

10

Dist.] 2021, orig. proceeding [mand. denied]).

The Texas proportionate responsibility statute provides a framework for apportioning percentages of responsibility in the calculation of damages for any cause of action based on tort in which more than one person or entity, including the plaintiff, is alleged to have caused or contributed to causing the harm for which the recovery of damages is sought. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 33.002(a)(1), 33.003. In accordance with this framework, the Texas Civil Practice and Remedies Code permits defendants to designate "responsible third parties," which it defines as persons who are "alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought." *Id*. §§ 33.004(a), 33.011(6). Proper designation is critical because it "enables a defendant to introduce evidence regarding a responsible third party's fault and to have the jury apportion responsibility to the third party even if that person has not been joined as a party to the lawsuit." *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018) (orig. proceeding) (per curiam).

Our analysis of METRO's second issue raised in its petition for writ of mandamus focuses on the procedures that must be followed to properly designate a responsible third party.

First, a defendant seeking to designate a responsible third party must file a motion for leave to designate with the trial court. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(a). A motion for leave to designate "must be filed on or before the 60th day before the trial date unless the court finds good cause to allow the motion to be filed at a later date." *Id*.

The trial court "shall" grant leave to designate the named person as a responsible third party unless another party files an objection on or before the fifteenth day after service of the motion and the objecting party establishes that

11

"the defendant did not plead sufficient facts concerning the alleged responsibility of the person to satisfy the pleading requirement of the Texas Rules of Civil Procedure." *Id.* § 33.004(f), (g)(1). The standard for designating a potentially responsible third party is fair notice pleading under the Texas Rules of Civil Procedure. *In re Bustamante*, 510 S.W.3d 732, 737 (Tex. App.—San Antonio 2016, orig. proceeding); *In re CVR Energy, Inc.*, 500 S.W.3d 67, 80 (Tex. App.— Houston [1st Dist.] 2016, orig. proceeding [mand. denied]). This standard is met when "an opposing party can ascertain from the pleadings the nature, basic issues, and the type of evidence that might be relevant to the controversy." *Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007); *see also* Tex. R. Civ. P. 47.

But following this procedure does not guarantee proper designation; other limitations in section 33.004 may apply. For example, subsection (d) limits third-party designations after the statute of limitations has expired and states as follows:

> A defendant may not designate a person as a responsible third party with respect to a claimant's cause of action after the applicable limitations period on the cause of action has expired with respect to the responsible third party if the defendant has failed to comply with its obligations, if any, to timely disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure.

Tex. Civ. Prac. & Rem. Code Ann. § 33.004(d). A separate limitation in subsection (j) applies when a defendant alleges that an unknown person committed a criminal act that contributed to the plaintiff's injury:

> Notwithstanding any other provision of this section, if, not later than 60 days after the filing of the defendant's original answer, the defendant alleges in an answer filed with the court that an unknown person committed a criminal act that was a cause of the loss or injury that is the subject of the lawsuit, the court shall grant a motion for leave to designate the unknown person as a responsible third party if:
> (1)    the court determines that the defendant has pleaded facts

12

sufficient for the court to determine that there is a reasonable probability that the act of the unknown person was criminal;

(2) the defendant has stated in the answer all identifying characteristics of the unknown person, known at the time of the answer; and

(3) the allegation satisfies the pleading requirements of the Texas Rules of Civil Procedure.

*Id*. § 33.004(j). If a party fails to follow these requirements, it cannot designate an unknown person as a responsible third party. *See, e.g.*, *In re Gonzales*, 619 S.W.3d 259, 262 (Tex. 2021) (orig. proceeding) (per curiam).

## B.   Application

Before analyzing whether METRO followed the procedures necessary to properly designate a responsible third party, we examine whether the limitations in section 33.004(d) or (j) apply.

### 1.   *Section 33.004(d) – Statute of Limitations*

Arguing that subsection (d) prohibits METRO from designating Stocker as a responsible third party, Smith points out that METRO did not file its motion for leave to designate until well after limitations had run on Smith's claim. Specifically, the statute of limitations on Smith's claim expired on June 9, 2017;[3] METRO filed its motion for leave to designate a responsible third party on April 20, 2021.

Smith cites *In re Dawson*, 550 S.W.3d at 628-31, to support this contention. In *Dawson*, the plaintiff was injured when a television fell from a wall in a restaurant, striking and injuring her. *Id*. at 627. Shortly after the limitations period expired, the defendant sought to designate the television installer as a responsible

_____

[3] The parties do not dispute that the statute of limitations on Smith's claim expired on this date.

third party. *Id.* The plaintiff opposed the designation on grounds that the defendant had not complied with the discovery rules' requirement regarding the timely identification of "any person who may be designated as a responsible third party." *Id*. at 628 (citing Tex. R. Civ. P. 194.2(l)). The trial court granted the defendant's motion for leave to designate and the plaintiff filed a petition for writ of mandamus. *Id*.

Arguing against the plaintiff's requested mandamus relief, the defendant asserted that two of its initial discovery responses were sufficient to put the plaintiff on notice that the installer may be designated as a responsible third party. *Id*. at 629. First, in its initial disclosures, the defendant alleged that "persons or entities beyond [its] control or employ[] . . . were the sole cause and/or a proximate cause" of the plaintiff's injuries. *Id*. Second, in its answer to an interrogatory, the defendant disclosed the name of the television installer. *Id.* However, the defendant never disclosed the installer's address or that he was an independent contractor rather than an employee. *Id*.; *see also* Tex. R. Civ. P. 194.2(b) (parties must provide the "name, address, and telephone number" for any potential parties or responsible third parties in their responses to requests for disclosure).

The supreme court concluded that these statements did not satisfy the defendant's disclosure obligations. *In re Dawson*, 550 S.W.3d at 629-30. Emphasizing that parties are required to respond to written discovery with complete information and supplement when they learn responses were incomplete or incorrect when made, the supreme court held that "the rules don't allow a party to drag its feet." *Id*. at 630 (citing Tex. R. Civ. P. 193.5(a)). Therefore, the trial court abused its discretion by granting the defendant leave to designate a responsible third party after limitations expired. *Id*.

As *Dawson* illustrates, the rules governing a defendant's designation of a

14

responsible third party after the expiration of limitations seek to limit any gamesmanship that could prejudice the proceedings. *See id.* (stating that the plaintiff "seeks to protect her right, prescribed in section 33.004(d) of the Texas Civil Practice and Remedies Code, to not have to try her case against an empty chair"); *see also In re Mobile Mini, Inc.*, 596 S.W.3d 781, 785 (Tex. 2020) (orig. proceeding) (per curiam) ("Unlike *Dawson*, the circumstances presented here do not invoke the gamesmanship concerns section 33.004(d) operates to prevent."); *In re VB Harlingen Holdings*, No. 13-19-00131-CV, 2019 WL 2707978, at \*8 (Tex. App.—Corpus Christi June 27, 2019, orig. proceeding) (mem. op.) (concluding the trial court did not err in denying the relator's motion for leave to designate a responsible third party, the court noted that "[t]he sequence of events here is replete with delay"); *In re CVR Energy, Inc.*, 500 S.W.3d at 73 (stating that section 33.004's limitations "prevent a defendant from undercutting the plaintiff's case by belatedly pointing its finger at a time-barred responsible third party") (internal quotation omitted).

But in contrast to *Dawson*, the facts here do not show METRO failed to timely comply with its discovery obligations in an attempt to gain an unfair advantage.

As set out above, subsection (d) prohibits the designation of a responsible third party after limitations has expired if the defendant "has failed to comply with its obligations, if any, to timely disclose that the person may be designated as a responsible third party under the Texas Rules of Civil Procedure." Tex. Civ. Prac. & Rem. Code Ann. § 33.004(d). The Texas Civil Practice and Remedies Code does not define the term "timely" in this context. In short, however, subsection (d) requires a defendant to disclose a potential responsible third party before the expiration of the statute of limitations "if that is possible." *In re Bustamante*, 510

15

S.W.3d at 736.

The relevant procedural history is set out above and may be summarized as follows:

| Date | Event/Filing |
|---|---|
| June 9, 2015 | Smith shot in parking lot. |
| March 22, 2016 | Smith files original petition asserting claims against METRO. |
| June 7, 2016 | METRO responds to Smith's requests for disclosure.<br><br>• METRO does not list the "name, address, or telephone number" for any potential parties or responsible third party.<br><br>• In describing its "legal theories" for the case, METRO states that it would show that Smith's injury was "proximately caused by the intentional and/or negligent actions of someone" not under METRO's control. |
| June 9, 2017 | Statute of limitations on Smith's claims expires. |
| June 19, 2017 | METRO files its first amended answer and asserted "Unavoidable Accident" and "Sole Proximate Cause" as affirmative defenses. Both defenses stated that a "third party" shot Smith. |
| August 25, 2017 | METRO files its first plea to the jurisdiction.<br><br>• In its plea, METRO alleges that Smith was "shot by someone other than Hudson." |
| July 17, 2018 | Letter sent from Assistant District Attorney Bard to counsel for Smith and METRO.<br><br>• Bard states that she is investigating several shootings believed to have been committed by a single suspect.<br><br>• Bard informs counsel that ballistics testing |

| | matched the bullet from Smith's body to a .22 caliber rifle found in the suspect's possession. |
|---|---|
| May 9, 2019 | The parties file an agreed motion for continuance. <br><br> • The parties reference Bard's letter and state that they were informed the bullet that hit Smith was "fired from a .22 caliber rifle." <br><br> • The parties state that Bard "shared additional facts which neither party may disclose due to a Confidentiality Agreement." |
| June 25, 2019 | METRO filed its second supplemental responses to Smith's requests for disclosure. <br><br> • Responding to the inquiries about "potential parties" and "responsible third parties," METRO referenced the "shooter" of the ".22 caliber rifle" but does not name the person. |
| November 4, 2019 | METRO files a combined traditional and no evidence motion for summary judgment. <br><br> • METRO attaches as evidence Detective Burrow's affidavit (dated April 15, 2019), which states that his investigation indicates that Stocker shot Smith. |
| March 7, 2021 | Smith files a motion to exclude all evidence regarding any alleged responsible third parties, citing METRO's failure to comply with section 33.004's requirements. |
| April 20, 2021 | METRO files its motion for leave to designate Stocker as a responsible third party. |

This sequence of events does not support the finding that METRO "failed to comply" with its discovery obligations under the Texas Rules of Civil Procedure. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(d). Although Metro's initial responses to Smith's requests for disclosure did not list the (then-unidentified) shooter as a "potential party" or "responsible third party," METRO asserted its

theory that someone other than Hudson shot Smith. *See* Tex. R. Civ. P. 194.2(b); *see also LaBeth v. Pasadena Bayshore Hosp., Inc.*, No. 14-10-01237-CV, 2012 WL 113050, at *5 (Tex. App.—Houston [14th Dist.] Jan. 12, 2012, pet. denied) (mem. op.) (observing that Rule 194.2 "is intended to require disclosure of a party's 'basic assertions'"). This disclosure was made over a year before the statute of limitations on Smith's claims expired.

METRO continued to espouse this theory after the limitations period expired on Smith's claims, including in its first amended answer and its first plea to the jurisdiction. Smith did not object to these references. In May 2019 — approximately two years after the limitations period expired — the parties filed an *agreed* motion for continuance acknowledging that they were in ongoing discussions with the Assistant District Attorney's office regarding allegations that a single suspect was responsible for multiple shootings, including Smith's. Shortly thereafter, METRO served its second supplemental responses to Smith's requests for disclosure and listed this unidentified "shooter" as a "potential party" and a "responsible third party." Smith did not object to these references.

METRO filed a summary judgment motion in November 2019 and attached evidence that identified Stocker as the suspect in multiple shootings, including Smith's. Smith did not object to this reference.

Rather, Smith waited until March 2021 to assert that METRO failed to comply with its disclosure obligations regarding responsible third parties — approximately five years after METRO first alleged that an unidentified shooter was responsible for Smith's injuries. This untimely objection is insufficient to show that METRO failed to comply with its discovery obligations as necessary to warrant exclusion of its evidence regarding responsible third parties. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(f). Sustaining this type of challenge would

18

condone the very type of gamesmanship section 33.004 is intended to prevent. *See In re Mobile Mini, Inc.*, 596 S.W.3d at 785; *In re Dawson*, 550 S.W.3d at 630.

The facts of this case are also dissimilar to those analyzed in *Dawson*. There, the defendant's discovery responses specifically omitted requested information that the defendant possessed, *i.e.*, the television installer's address and that he was an independent contractor rather than an employee. *See In re Dawson*, 550 S.W.3d at 629. In contrast here, the record shows that METRO was not withholding information from Smith but disclosed what it suspected at the time: that someone other than Hudson shot Smith. Further, Bard's July 2018 letter and the parties' agreed motion for a continuance tend to show the parties were on even footing when it came to further developments in the investigation and the disclosure of evidence suggesting that Stocker was the person who shot Smith. This course of events does not support the finding that METRO failed to comply with its discovery obligations regarding the designation of a responsible third party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(d).

Therefore, the limitation in section 33.004(d) does not warrant denying METRO's motion for leave to designate a responsible third party. *See id.*

### 2. Section 33.004(j) — Criminal Act Committed by an Unknown Responsible Third Party

Citing this subsection, Smith argues the trial court properly denied METRO's motion for leave because METRO failed to allege in a pleading filed within 60 days of its original answer that an unknown John Doe committed a criminal act that contributed to Smith's injury. *See id.* § 33.004(j).

Smith cites *In re Gonzales*, 619 S.W.3d at 260-65, to support this argument. There, the plaintiff sued the defendant after he was in a car accident with one of the defendant's truck drivers. *Id.* at 260. The defendant filed its original answer

asserting a general denial and, approximately four months later, filed a motion for leave to designate an unknown truck driver as a responsible third party for allegedly contributing to cause the accident. *Id.* Over the plaintiff's objections, the trial court granted the defendant's motion for leave. *Id.* at 261.

Concluding that the trial court abused its discretion by granting the motion for leave, the supreme court held that the defendant failed to comply with section 33.004(j)'s requirements for the designation of an unknown party. *Id.* at 263. Specifically, the defendant "did not file any amended answer until more than two years and eight months after it filed its original answer, and that amended answer contained no allegations about any 'unknown' responsible third party." *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(j).

But unlike the facts in *Gonzales*, METRO did not seek to designate an unknown person as a responsible third party. Rather, METRO's motion for leave sought to designate Stocker as a responsible third party. Therefore, the requirements in section 33.004(j) and the reasoning in *Gonzales* do not apply here.

Accordingly, the limitation in section 33.004(j) does not warrant denying METRO's motion for leave to designate a responsible third party.

### 3. *Section 33.004(a), (f), and (g) — Requirements for a Motion for Leave to Designate a Responsible Third Party*

Finally, the record shows that METRO complied with the requirements governing its motion for leave to designate a responsible third party. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(a), (f), (g).

First, the motion was filed on or before the 60th day before trial. *See id.* § 33.004(a). Specifically, the record shows that there was no pending trial setting

when the motion was filed on April 20, 2021.[4]

As required, Smith objected to METRO's motion for leave within 15 days. *See id*. § 33.004(f). Thereafter, the trial court was required to grant METRO's motion for leave unless Smith established that (1) METRO failed to plead sufficient facts concerning the responsible third party and (2) after having been granted leave to replead, METRO again failed to plead sufficient facts concerning the alleged responsibility of the third party. *Id*. § 33.004(g).

METRO's motion for leave satisfied the fair notice standard for pleading and included sufficient facts regarding Stocker's alleged responsibility for the underlying incident. *See In re YRC Inc.*, 646 S.W.3d 805, 809 (Tex. 2022) (orig. proceeding) (per curiam) ("To plead sufficient facts on a motion for leave to designate a responsible third party under Section 33.004, a movant must satisfy only this fair-notice requirement."). The motion states that METRO's counsel was informed by Assistant District Attorney Bard that the .22 caliber bullet that struck Smith "was fired from a rifle belonging to Jamin Kidron Stocker." The motion also states that the investigating officers found the rifle in Stocker's home, as well as newspaper articles about the shooting. These pleadings are sufficient to inform Smith of the alleged nexus between Stocker and the underlying incident as well as the relevant evidence. *See id*. at 809-10 ("So long as a party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy, a pleading satisfies the Rule 47(a) standard.").

Moreover, even if METRO's motion failed to satisfy these pleading requirements, subsection (g)(2) required the trial court to provide METRO an

---

[4] Smith points out in his appellee's brief that the case had previously been set for trial seven times. However, section 33.004(a)'s use of the phrase "trial date" is not limited to the initial trial date but rather the trial date active at the time the motion to designate is filed. *See In re YRC, Inc.*, 646 S.W.3d 805, 808 (Tex. 2022) (orig. proceeding) (per curiam).

21

opportunity to replead. *See* Tex. Civ. Prac. & Rem. Code Ann. § 33.004(g)(2); *see also In re YRC Inc.*, 646 S.W.3d at 810. The trial court lacked discretion to deny the motion for leave without affording METRO that opportunity. *See In re YRC Inc.*, 646 S.W.3d at 810.

For the reasons above, we sustain METRO's second issue and conclude that the trial court abused its discretion in denying METRO's motion for leave to designate Stocker as a responsible third party. Because this decision formed the basis for the trial court's exclusion of all testimony, argument, and evidence of a non-party's liability and its order striking METRO's third amended answer, we also sustain METRO's first and third issues. Accordingly, we hold that METRO is entitled to mandamus relief. *See In re Coppola*, 535 S.W.3d at 510 ("a relator need only establish a trial court's abuse of discretion to demonstrate entitlement to mandamus relief with regard to a trial court's denial of a timely-filed section 33.004(a) motion").

## II. Interlocutory Appeal

We now turn to METRO's interlocutory appeal, in which it raises three issues and asserts the trial court erred by:

1. denying its second plea to the jurisdiction;
2. striking the entirety of Detective Burrow's deposition, which was attached as an exhibit to its second plea to the jurisdiction; and
3. excluding all testimony, argument, and evidence of a non-party's liability.

We addressed the third issue in our discussion of METRO's petition for writ of mandamus and concluded that the trial court's denial of METRO's motion for leave to designate a responsible third party did not provide a basis to exclude all testimony, argument, and evidence of a non-party's liability.

22

METRO's first and second issues address the trial court's ruling on its plea to the jurisdiction. In its order denying the plea, the trial court also concluded that Detective Burrow was "unqualified" to testify based on Texas Rules of Evidence 402, 403, and 703, and struck his deposition in its entirety. METRO challenges this ruling in its second issue; we presume without deciding that this evidentiary ruling was in error. Nonetheless, considering all the jurisdictional evidence, we conclude that the trial court did not commit reversible error in denying METRO's plea to the jurisdiction. We overrule METRO's first issue.

## A.    Standard of Review and Governing Law

A trial court's subject matter jurisdiction may be challenged in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). We review the trial court's ruling on a plea to the jurisdiction *de novo*. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019).

Parties may submit evidence supporting or opposing the plea, which we review under the same standard applicable to a traditional motion for summary judgment. *Id*. (citing *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 384 (Tex. 2016)). We take as true all evidence favorable to the plaintiff, indulging every reasonable inference and resolving any doubts in the plaintiff's favor. *Sampson*, 500 S.W.3d at 384. If the relevant evidence fails to raise a fact question on the jurisdictional issue, the court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228. If the evidence instead creates a fact question regarding the jurisdictional issue, then the trial court must deny the plea and allow the factfinder to resolve the issue. *Id*. at 227-28.

As a governmental unit, METRO is immune from suit absent an express waiver of governmental immunity. *See Alamo Heights Indep. Sch. Dist. v. Clark*,

23

544 S.W.3d 755, 770 (Tex. 2018) (stating that governmental units are immune from suit unless the state consents); *see also Metro. Transit Auth. of Harris Cnty. v. Douglas*, 544 S.W.3d 486, 492 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

The Texas Tort Claims Act provides a limited waiver of immunity for certain tort claims asserted against a governmental unit. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 101.001-101.109. Relevant here, section 101.021(2) of the Act waives a governmental unit's immunity from a suit for personal injuries "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." *Id*. § 101.021(2). In order to state a claim based upon the misuse of tangible personal property, "a plaintiff must allege that the property was used or misused by a governmental employee acting within the scope of his or her employment." *Lenoir v. U.T. Physicians*, 491 S.W.3d 68, 89 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

### B. Evidence

In its second plea to the jurisdiction, METRO asserted that the facts alleged in Smith's petition are insufficient to establish jurisdiction because there is no evidence that Hudson "used or misused" property within the scope of his employment, *i.e.*, shot Smith while they were working in the parking lot. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). Rather, METRO argues the evidence conclusively establishes that Stocker shot Smith.

To support this contention, METRO attached as evidence the transcript from Detective Burrow's deposition.

At his deposition, Detective Burrow said he has been employed by the

24

Houston Police Department for approximately 15 years and currently investigates serious violent crimes, including officer-involved shootings. Detective Burrow said he started looking into Smith's shooting when he was investigating "numerous shootings that happened in and around Third Ward in the Museum District between 2015 and 2017." According to Detective Burrow, the investigators "believe[d] the Smith shooting was related to the three other officer-involved shootings that happened in that area between 2015 and 2016." Detective Burrow said the investigators "came to the conclusion that there was likely a sniper operating in the Third Ward area that was targeting police officers."

Detective Burrow said investigators developed Stocker as a suspect in early 2018. According to Detective Burrow, Stocker "had very extreme antipolice views"; a "hit list of public officials saved to his cell phone"; and posts on his social media "celebrating" the shootings of police officers.

Detective Burrow said that, at the time of Smith's shooting, Stocker was living in a house a short distance from where Smith was shot. An arrest warrant was executed at the house in August 2017. During the execution of the warrant, Detective Burrow said a .22 caliber rifle was found that later was matched by ballistics testing to the bullet recovered from Smith's body. Detective Burrow said this rifle was also matched to three other shootings, two of which were officer-involved.

Detective Burrow also recalled that a search of Stocker's phone revealed that he had bookmarked news articles about officer-involved shootings, including Smith's. Detective Burrow said Stocker had sent articles about Smith's shooting to his father and to one of his associates. In sum, Detective Burrow concluded that, based upon his training and the investigation of Smith's shooting, Stocker likely was the person who shot Smith.

Detective Burrow also opined that Hudson did not shoot Smith and pointed to the following factors: (1) a .22 caliber rifle was not recovered from Hudson; (2) Hudson was not known to carry a .22 caliber rifle; (3) investigating officers did not find evidence that Hudson owned a .22 caliber weapon; and (4) a civilian witness at the scene at the time of the shooting did not recall seeing Hudson with a rifle.

During the deposition, Smith's counsel questioned Detective Burrow about an earlier investigation completed by Sergeant Robles, in which Sergeant Robles concluded that the "most likely explanation" was that Hudson accidentally shot Smith. Detective Burrow acknowledged that there is no direct evidence that Stocker was in Houston or near the location of the shooting on the day it occurred. Detective Burrow also agreed that investigators had not been able to identify the exact location where Stocker allegedly shot Smith from.

Smith's counsel also questioned Detective Burrow about other ballistics testing done on the .22 caliber rifle recovered from Stocker's residence. According to Detective Burrow, the first testing report utilized "regular stocked .22 caliber ammunition" and returned a finding of "inconclusive." However, when the testing was performed using ammunition recovered from Stocker's residence, there was a match with the bullet recovered from Smith's body. Detective Burrow stated that the .22 caliber rifle found at Stocker's residence was purchased at an Academy store in January 2015 and agreed that it "is readily available" at other sports-and-outdoors stores.

Finally, Detective Burrow agreed that there was not any direct evidence that Stocker shot Smith but, rather, "circumstantial evidence that he is the shooter."

Responding to METRO's second plea to the jurisdiction, Smith attached as evidence Sergeant Robles' investigative reports and the findings from gunshot

26

residue testing. Sergeant Robles' reports were completed shortly after Smith's shooting in June 2015. Ultimately, Sergeant Robles concluded that, "[a]t this point in the investigation, it is believed that Ofc. Hudson accidentally shot Ofc. Smith, however there is not enough evidence present to close this case as an Accidental Shooting." To support this conclusion, Sergeant Robles pointed to the following:

- Smith told Sergeant Robles that he "was absolutely certain that the shot could not have come from more than 10 yards from him."

- Smith told Sergeant Robles that Hudson told Smith "to check himself for a gunshot wound right after they heard the sound."

- When interviewing Hudson, Sergeant Robles found Hudson's responses "to be extremely suspicious such as the type of responses I have encounter[ed] during murder investigations in the Homicide Division."

- An FBI firearms investigator concluded that .22 caliber ammunition would penetrate 14-16 inches if shot "at relatively close range." The bullet removed from Smith traveled 14 inches through his abdominal area.

- Hudson "fail[ed] the polygraph showing deception."

- Smith "truly did not know who had shot him but also had the same suspicions that he may have been shot by Ofc. Hudson." Smith's interview "was believed to be truthful by the investigators involved."

The gunshot residue testing was performed on the shirt Hudson was wearing the day of the shooting and yielded the following summary:

Item #1 samples labeled Left Side of Shirt had particles confirmed as having a composition characteristic of [gunshot residue] which likely resulted from activities such as firing a weapon, being in close proximity to a firearm during discharge, or handling a firearm, a fired cartridge, or some other surface bearing [gunshot residue].

27

## C.    Application

Smith objected to Detective Burrow's deposition based upon Texas Rules of Evidence 402, 403, and 703, and the trial court sustained these evidentiary objections.    Assuming *arguendo* that the trial court erred in sustaining these objections, we conclude the entirety of the evidence presented in METRO's second plea to the jurisdiction and the response thereto does not support granting the plea. *See, e.g.*, *City of Dallas v. Kennedy*, No. 05-19-01299-CV, 2020 WL 3286515, at *5 (Tex. App.—Dallas June 18, 2020, no pet.) (mem. op.).

In our review, we take as true all evidence favorable to Smith and indulge every reasonable inference and resolve any doubts in his favor. *See Sampson*, 500 S.W.3d at 384.  Sergeant Robles' investigative reports concluded that Hudson shot Smith and provided several factors to support this conclusion.  Further, the gunshot residue testing of Hudson's shirt suggested he was in close proximity to the firing of a firearm, which also would support the finding that he shot Smith.  In contrast, Detective Burrow opined that Stocker shot Smith and pointed to several pieces of evidence, most importantly, the ballistics testing that matched the .22 caliber rifle recovered from Stocker's residence to the bullet removed from Smith.   But Detective Burrow did not rule out all factors that could support a finding that Hudson shot Smith; rather, as Detective Burrow acknowledged, the evidence implicating Stocker was entirely circumstantial and earlier ballistics testing performed on Stocker's rifle returned the finding of "inconclusive."

Viewing this evidence in the light most favorable to Smith, it is sufficient to raise a question of fact regarding whether Hudson shot Smith. *See Miranda*, 133 S.W.3d at 228.  Therefore, because the evidence creates a fact issue regarding the relevant jurisdictional issue, the trial court did not err in denying METRO's second plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).

28

In sum, we presume without deciding that the trial court committed reversible error by striking the entirety of Detective Burrow's deposition. Considering all the jurisdictional evidence, we conclude that the trial court did not commit reversible error in denying METRO's plea to the jurisdiction. We therefore overrule METRO's first and second issues raised in its interlocutory appeal.

METRO's third issue challenges the trial court's exclusion of all testimony, argument, and evidence of a non-party's liability. We addressed this issue above in our analysis of METRO's petition for writ of mandamus, and we overrule METRO's third issue.

We affirm the trial court's denial of METRO's second plea to the jurisdiction.

## CONCLUSION

With respect to METRO's petition for writ of mandamus, we conclude the trial court failed to properly apply section 33.004 and abused its discretion by denying METRO's motion for leave to designate Jamin Stocker as a responsible third party. Because METRO does not have an adequate remedy at law, rendering mandamus relief is appropriate. Pursuant to Texas Rule of Appellate Procedure 52.8(c), we determine METRO is entitled to mandamus relief and order the trial court to vacate (1) its order denying METRO's motion to designate Jamin Stocker as a responsible third party, (2) its order granting Smith's "Motion to Exclude All Testimony, Evidence, and Argument Regarding Any and All Undesignated Alleged Responsible Third Parties", and (3) its order striking METRO's third amended answer. We will order the clerk of this court to issue a writ of mandamus only if the trial court fails to comply.

29

Turning to METRO's interlocutory appeal, we conclude the trial court did not err in denying METRO's second plea to the jurisdiction. We affirm the trial court's denial of METRO's second plea to the jurisdiction.



/s/    Meagan Hassan
        Justice


Panel consists of Justices Wise, Spain, and Hassan.